Paul G. GUSTAFSON, Appellant,

v.

PROVIDER HEALTHNET SERVICES, INC., Appellee.

No. 05–03–00498–CV.

Court of Appeals of Texas, Dallas.

Oct. 3, 2003.

Rehearing Overruled Nov. 6, 2003.

Christopher M. McDowell; Jackson D. Wilson, II, Brown & McCarroll, LLP, Dallas, for Appellant.

Michael P. Lynn, John T. Cox, Basheer Youssef Ghorayeb, Lynn Tillotson & Pinker L.L.P., Dallas, for Appellee.

Before Justices MORRIS, O'NEILL, and LANG.

## OPINION

Opinion by Justice O'NEILL.

In this interlocutory appeal, appellant Paul G. Gustafson appeals an order denying his special appearance in a suit brought by appellee Provider HealthNet Services, Inc. (PHNS). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(7) (Vernon Supp.2003). Gustafson presents seven issues generally contending his special appearance should have been granted. For the following reasons, we reverse the trial court's order and render judgment dismissing PHNS's claims against Gustafson for lack of jurisdiction.

### BACKGROUND

In 2001, Gustafson was the director of the Health Information Medical Department (HIM) of one of Detroit Medical Center's (DMC) seven hospitals in the State of Michigan. HIM is the hospital department responsible for maintaining patient records.

That year, DMC began negotiations with appellee PHNS, an outside company, to allow PHNS to provide outsourcing of DMC's HIM department. PHNS is a Delaware corporation with its principal place of business in Dallas, Texas. DMC and PHNS ultimately entered into contract in which PHNS would provide HIM outsourcing services to DMC. Among other things, the contract required PHNS to employ existing DMC employees, including Gustafson, for at least six months. Gustafson was involved in negotiating and drafting some of the contract's provisions and was thus aware PHNS's corporate headquarters were in Dallas, Texas and that the contract would result in his becoming a PHNS employee. All negotiations in which Gustafson participated occurred in Michigan. On April 1, 2002, Gustafson who had been a DMC employee for seven years, formally became a PHNS employee. When he became a PHNS employee, Gustafson executed some documents including a confidentiality agreement. Although the documents were sent from Dallas, Texas, Gustafson executed all of the documents in Michigan. On October 30, 2003, after working for PHNS for seven months, PHNS terminated Gustafson for the stated reason of poor job performance. After his termination, DMC rehired Gustafson.

PHNS subsequently filed suit in Texas against Gustafson. In its suit, PHNS alleged that Gustafson had, while employed by PHNS, provided PHNS's confidential information to DMC as well as a PHNS competitor. PHNS alleged Gustafson would continue to use PHNS's confidential information against it in his employment with DMC. PHNS alleged Gustafson's actions constituted a breach of his confidentiality agreement, misappropriation of trade secrets and business information, and a breach of his fiduciary duties to PHNS. Gustafson filed a special appearance asserting the Texas court had no personal jurisdiction over him. Following a hearing, the trial court denied the special appearance. Gustafson asserts the trial court erred in doing so. PHNS responds

the trial court properly denied the motion because specific jurisdiction exists over Gustafson.

A Texas court may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with the due process clause of the United States constitution. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident that "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). The long-arm statute defines "doing business" as (1) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in Texas, (2) commission of a tort in whole or in part in Texas, or (3) recruitment of Texas residents, directly or through an intermediary located in Texas. *Id.* The broad language of the long-arm statute permits a Texas court to exercise jurisdiction as far as the federal constitution will permit. *Marchand,* 83 S.W.3d at 795. Consequently, in determining whether jurisdiction exists, we need only determine whether the exercise of jurisdiction comports with the due process clause of the United States Constitution. *See City of Riverview, Michigan v. Am. Factors, Inc.,* 77 S.W.3d 855, 857 (Tex.App.-Dallas 2002, no pet.).

The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident defendant if (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Federal due process requires the defendant to "purposefully avail" itself of the privilege of conducting activity within the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). While not determinative, foreseeability is an important consideration in deciding whether a nonresident defendant has purposefully established minimum contacts with the forum state. *Marchand,* 83 S.W.3d at 795.

A defendant's contacts with a forum state may give rise to either general or specific jurisdiction. *Marchand,* 83 S.W.3d at 795–96; *Rittenmeyer v. Grauer,* 104 S.W.3d 725, 729 (Tex.App.-Dallas 2003, no pet.). In this case, PHNS is asserting only specific personal jurisdiction existed over Gustafson.[1] Specific jurisdiction exists if the defendant's activities have been "purposefully directed" to the forum and the litigation results from injuries arising out of or relating to those activities. *Magic House AB v. Shelton Beverage L.P.,* 99 S.W.3d 903, 908 (Tex.App.-Dallas 2003, no pet.); *see also Rittenmeyer,* 104 S.W.3d at 729. The defendant's purposeful conduct, not the unilateral acts of the plaintiff, must have caused the contact. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Boissiere v. Nova Capital, L.L.C.,* 106 S.W.3d 897, 901 (Tex.

---

1. In oral argument, PHMS has conceded that Texas courts do not have general jurisdiction over Gustafson.

App.-Dallas 2003, no pet.). In determining specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). With respect to contacts created by a contractual relationship, we consider (1) prior negotiations, (2) contemplated future consequences, (3) terms of the contract, and (4) the actual course of dealing. *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Kelly Inv., Inc. v. Basic Capital Mgmt., Inc.*, 85 S.W.3d 371, 374 (Tex.App.-Dallas, no pet.). In determining jurisdiction, we carefully weigh the facts and must avoid mechanical application of any test. *Guardian Royal*, 815 S.W.2d at 231; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex.1990).

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Marchand*, 83 S.W.3d at 793. A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Marchand*, 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985).

■ Whether a court has personal jurisdiction over a nonresident defendant is a question of law which we review de novo. *Marchand*, 83 S.W.3d at 794. However, a trial court's factual findings may be reviewed for legal and factual sufficiency of the evidence. *Id.* at 794. Once we have determined the evidence is sufficient to support the trial court's resolution of disputed fact issues, or if the relevant facts are not disputed, we examine de novo whether the facts negate all bases for personal jurisdiction. *Kelly*, 85 S.W.3d at 374.

■ In this case, the relevant facts are not disputed. Therefore, we review de novo whether Gustafson showed no specific jurisdiction existed. PHNS sued Gustafson for breach of a confidentiality agreement, common law misappropriation, misappropriation of trade secrets, and breach of fiduciary duty. To show specific jurisdiction over Gustafson existed, PHNS relies on Gustafson's contacts with Texas by virtue of his employment with PHNS. These contacts consist of (1) the employment relationship itself, (2) two short visits to Texas, associated with Gustafson's employment, (3) Gustafson was paid from a Texas bank, (4) Gustafson submitted requests for reimbursement to PHNS's Texas office and cashed checks for reimbursement that were drawn off a Texas bank, (5) Gustafson communicated with PHNS employees that were located in Texas, (5) Gustafson's health benefits were administered from PHNS's Texas offices, (6) Gustafson's health insurance was through Blue Cross Blue Shield of Texas, and (7) insurance agents located in Texas administered Gustafson's dental and life insurance.

■ We begin by noting that the mere fact that Gustafson was employed by a company with its principal place of business in Texas is not sufficient to establish the requisite minimum contacts with Texas. *See Rittenmeyer*, 104 S.W.3d at 733 (mere fact that Delaware corporation's headquarters were in Texas not sufficient to give Texas court jurisdiction over director of corporation who committed tort against corporation); *see also Burger King*, 471 U.S. at 478, 105 S.Ct. 2174 (contract with nonresident cannot alone justify personal jurisdiction). Likewise, after reviewing the contacts as a whole in light of the claims alleged, we conclude they were not sufficient to establish specific jurisdiction. In analyzing minimum contacts, it is not the number but rather the quality and

nature of the nonresident defendant's contacts with the forum state that are important. *Kelly*, 85 S.W.3d at 374. Here, none of the contacts relied upon are connected to Gustafson's execution of the confidentiality agreement, or his dissemination of confidential information, both of which occurred in Michigan. Instead, the contacts PHNS relies on relate only superficially to his general employment relationship with PHNS. These contacts were necessarily created when PHNS took over certain operations of a Michigan hospital and in doing so automatically employed several DMC employees, including Gustafson. Gustafson never signed an employment agreement with PHNS. His job remained virtually the same and he worked in the same Michigan office as when he was employed directly by DMC. Although Gustafson traveled to Texas twice for management meetings, PHNS does not assert Gustafson's breached any duties to it or committed any torts during these meetings. The first visit lasted one and a half days and occurred before Gustafson formally became a PHNS employee and before he signed the confidentiality agreement. The second visit was a day trip in which Gustafson attended a meeting that was also attended by representatives of a third company. Finally, while Gustafson may have been a fairly high-level PHNS employee and communicated on occasion with PHNS employees in Texas, his direct supervisors were on location at DMC in Michigan. We conclude the contacts relied upon do not support specific jurisdiction for the claims alleged. *See Lang v. Capital Res. Inv., I and II, LLC*, 102 S.W.3d 861, 866 (Tex.App.-Dallas 2003, no pet.) (holding no specific jurisdiction where alleged tortious conduct is not related to defendant's contacts with Texas); *Magic House*, 99 S.W.3d at 910–11 (holding no specific jurisdiction existed where cause of action did not relate to the specific contacts alleged).

PHNS also asserts jurisdiction exists because Gustafson's employment with PHNS, a Delaware corporation headquartered in Texas, created "continuing obligations" with Texas. PHNS relies on *Burger King v. Rudzewicz* to support this contention. However, the written contract between the franchisee in *Burger King* and Burger King Corporation expressly required performance in the forum state and the breach thus occurred in the forum state. *Burger King*, 471 U.S. at 468–68, 105 S.Ct. 2174. Further, the agreement provided it would be governed by the laws of the forum state. *Id.* at 481–81, 105 S.Ct. 2174. In his case, however, Gustafson signed no employment agreement and he retained the same job and job duties he had when employed by the Michigan hospital. Gustafson did sign a confidentiality agreement, but that agreement, executed in Michigan, made no reference to the State of Texas and did not require any performance in this State. We conclude Gustafson did not, by his actions, create continuing obligations in the State of Texas sufficient to allow Texas courts to exercise jurisdiction over him. *Cf. Rittenmeyer*, 104 S.W.3d at 733–34 (directors of Delaware corporation headquartered in Texas did not create continuing obligations in Texas).

We recognize that a breach of the confidentiality agreement could cause an injury in Texas. However, the mere fact that an injury is caused in the forum state is insufficient to establish minimum contacts. *See City of Riverview*, 77 S.W.3d at 858. We conclude Gustafson did not purposefully establish minimum contacts with Texas such to support exercising specific jurisdiction over him. Therefore, the trial court erred denying in his special appearance. We reverse the trial court's order and

render judgment dismissing PHNS's claims against Gustafson for lack of jurisdiction.