David M. GONZALEZ, Appellant,

v.

AAG LAS VEGAS, L.L.C., Ascent Automotive Group, L.P., and KW# 1 Acquisition Company, L.L.C., Appellees.

No. 01–08–00377–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 29, 2009.

Christian M. Orme, Mark A. Hutchison, Hutchison & Steffen, Las Vegas, NV, Christy L. Denison, Fred W. Stumpf, Stumpf & Falgout, Houston, TX, for Appellant.

Edward L. Friedman, Craig L. Weinstock, Christopher Benjamin Dove, Locke, Liddell & Sapp, LLP, Houston, TX, for Appellee.

Panel consists of Justices ALCALA, HANKS, and WILSON.[1]

## OPINION ON REHEARING

DAVIE L. WILSON, Justice (Retired).

Appellees, AAG Las Vegas, LLC, Ascent Automotive Group, L.P., and KW # 1 Acquisition Company, LLC ("appellees"), have filed a motion for rehearing of our opinion issued on June 4, 2009. We withdraw our opinion and judgment of June 4, 2009 and substitute this opinion and judgment in their place.

In this accelerated, interlocutory appeal, appellant, David M. Gonzalez ("Gonzalez"), challenges the trial court's order denying his special appearance.[2] In his sole issue on appeal, Gonzales contends that he is not amenable to service in Texas because he did not have sufficient minimum contacts with Texas to satisfy the requirements of due process. We reverse and render.

## Background

Gonzalez is a resident of Las Vegas, Nevada. Appellee AAG Las Vegas, L.L.C. ("AAG–Las Vegas") is a Delaware limited liability company with its principal place of business in Nevada. Appellee KW # 1 Acquisition Company, L.L.C. ("KW # 1") is a Delaware limited liability company with its principal place of business in Ohio. Appellee Ascent Automotive Group, L.P. ("Ascent") is a Delaware limited partnership with its principal place of business in Houston, Texas.

While employed in Ohio at an automotive dealership, Gonzalez was approached by David Watts ("Watts"), Chief Operating Officer of Ascent, regarding a possible management position with Lexus of Akron–Canton, an Ohio Lexus dealership that Watts was considering purchasing with Kevin Whalen ("Whalen"). In June 2004, Gonzalez traveled to Houston to interview for the general manager position. At the Houston meeting, Gonzalez interviewed with Watts, Whalen, and Jerry Pyle ("Pyle"). In addition to evaluating Gonzalez at the meeting, Watts and Whalen asked Pyle to invest in the Akron dealership as well as a Lexus dealership in Cleveland. During the interview, the parties discussed a program to permit managers to acquire a partial interest in the car dealerships. Gonzalez claims that, during these discussions, he was promised the right to earn a ten percent ownership in the two car dealerships.

The following September, KW # 1 hired Gonzalez to be the general manager of the KW # 1 Lexus of Akron–Canton dealership. As general manager of the Canton dealership, Gonzalez reported to Watts in

1. The Honorable Davie L. Wilson, retired Justice, First Court of Appeals, sitting by assignment.

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon 2008) (providing that parties may challenge trial court's orders regarding special appearances by interlocutory appeal).

Texas and received his pay from Texas. Gonzalez also regularly telephoned Houston to report on the status of the dealership.

In 2005, AAG–Las Vegas purchased a Lexus dealership in Las Vegas, Nevada ("AAG Lexus of Las Vegas"). Shortly after that, AAG–Las Vegas hired Gonzalez to be the general manager of AAG Lexus of Las Vegas.

After accepting the position, Gonzalez moved from Ohio to Las Vegas and began working as general manager of Lexus of Las Vegas. During his time as general manager, Gonzalez made another trip to Houston to attend a two-day general manager's meeting. Appellant's duties at AAG Lexus of Las Vegas were identical to his duties at KW# 1's Lexus of Akron–Canton. AAG–Las Vegas was the corporate entity responsible for paying Gonzalez as general manager of Lexus of Las Vegas.

In Fall 2006, AAG–Las Vegas terminated Gonzalez's employment with Lexus of Las Vegas. AAG–Las Vegas asserts that it terminated Gonzalez because, while Gonzalez was employed at Lexus of Las Vegas, he (1) improperly usurped business opportunities by secretly trying to obtain other dealerships, (2) actively recruited other Lexus of Las Vegas employees to leave Lexus of Las Vegas, (3) improperly purchased a car from one of his recruits, (4) did not effectively attend to inventory management, causing reduced profits, and (5) was late and unprepared for meetings at the Las Vegas dealership.

On October 19, 2006, appellees sued Gonzalez in Texas in this case. Among other things, they sought to declare the parties' ownership interests in Lexus of Las Vegas and Lexus of Akron–Canton. On January 26, 2007, Gonzalez sued appellees in Nevada, also seeking a declaration of the parties' rights to the two dealerships in addition to various other causes of action. The two lawsuits are founded on substantially the same issues and facts.

Gonzalez filed a special appearance in this case, challenging the trial court's in personam jurisdiction over him for the entire proceeding. Gonzalez contended that he lacked the requisite minimum contacts with Texas to satisfy the requirements of due process and that the trial court's exercise of personal jurisdiction over him would violate the traditional notions of fair play and substantial justice. Appellees filed a response. Following a hearing, the trial court denied Gonzalez's special appearance. This interlocutory appeal followed.

## Gonzalez's Special Appearance

In his sole issue, Gonzalez contends that the trial court erred in denying his special appearance.

### A. Standard of Review

■ Special appearances are governed by Rule 120a of the Texas Rules of Civil Procedure, which provides that "a special appearance may be made by any party ... for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process by the courts of this State." Tex.R. Civ. P. 120a. The existence of personal jurisdiction is a question of law reviewed de novo by this Court. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). However, this question must sometimes be preceded by resolving underlying factual disputes. *Id.* When, as here, the trial court does not issue fact findings, we presume that the trial court resolved all factual disputes in favor of its ruling. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002).

## B. Personal Jurisdiction

■ "Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards." *Id.* (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991)); *see* TEXAS CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 2008) (Texas long-arm statute). The long-arm statute allows Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in the state. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2008). The Texas Supreme Court has held that "section 17.042's broad language extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795.

■ Initially, the plaintiff bears the burden of pleading allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Am. Type Culture Collection*, 83 S.W.3d at 807. However, a nonresident defendant who files a special appearance assumes the burden of negating all bases of personal jurisdiction that the plaintiff has alleged. *Id.* We review all evidence in the record to determine if the nonresident defendant negated all possible grounds. *N803RA, Inc. v. Hammer*, 11 S.W.3d 363, 366 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985)).

■■ Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Am. Type Culture Collection*, 83 S.W.3d at 806 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). A nonresident defendant's minimum contacts must derive from purposeful availment: a nonresident defendant must have "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction to establish sufficient contacts with the forum to confer personal jurisdiction. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)); *Xenos Yuen v. Fisher*, 227 S.W.3d 193, 200 (Tex.App.-Houston [1st Dist.] 2007, no pet.). An act or acts "by which the defendant purposefully avails itself of the privilege of conducting activities" in Texas and "thus invok[es] the benefits and protections" of Texas law, constitutes sufficient contact with Texas to confer personal jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

■ We consider three elements in assessing purposeful availment. *See Michiana Easy Livin' Country*, 168 S.W.3d at 785; *First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 782 (Tex App.-Houston [1st Dist.] 2008, no pet.). First, we consider only the defendant's own actions, not those of the plaintiff or any other third party. *Michiana Easy Livin' Country*, 168 S.W.3d at 785; *First Oil PLC*, 264 S.W.3d at 782; *see also U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977) (quoting *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239–40) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is

essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

■ Second, the defendant's activities must be purposeful, not random, isolated, or fortuitous. *Michiana Easy Livin' Country*, 168 S.W.3d at 785; *First Oil PLC*, 264 S.W.3d at 782. "It is the *quality* rather than the *quantity* of contacts that is determinative." *First Oil PLC*, 264 S.W.3d at 782 (emphasis in original). Third, the defendant must seek some benefit, advantage, or profit by virtue of its activities in the proposed forum state, because this element is based on the notion of implied consent. *Michiana Easy Livin' Country*, 168 S.W.3d at 785; *First Oil PLC*, 264 S.W.3d at 782.

■ Our jurisdictional analysis is further divided into general and specific jurisdiction. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). General jurisdiction will attach when "a defendant's contacts in a forum are continuous and systematic permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Id.* To support general jurisdiction, the defendant's forum activities must have been "substantial," which requires stronger evidence of contacts than for specific personal jurisdictions. *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 114 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

■ Specific jurisdiction arises when the defendant's alleged liability arises from or is related to an activity conducted within the forum. *BMC Software*, 83 S.W.3d at 796. "For a nonresi-

dent defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). This requirement assesses "the strength of the necessary connection between the defendant, the forum, and the litigation." *Id.* at 584.

## C. Discussion

■ In his sole issue, Gonzalez asserts that the trial court erred in denying his special appearance because Gonzalez is not subject to Texas's specific personal jurisdiction and because the exercise of personal jurisdiction over him does not comport with fair play and substantial justice. Gonzalez contends he does not have the minimum contacts necessary to subject him to specific personal jurisdiction in Texas because: (1) he has not purposefully availed himself of the laws and privileges of doing business in Texas, and (2) his contacts with Texas are not related with appellees' claims in this litigation. Appellees respond that jurisdiction is proper because there is a substantial connection between Gonzalez's contacts with Texas and the operative facts of this litigation.

As applied to this case, the test for specific personal jurisdiction over Gonzalez requires—in addition to Gonzalez's purposeful direction of activities toward or purposeful availment of the privileges of doing business in Texas—a substantial connection between his contacts and the litigation's operative facts. *See Moki Mac River Expeditions*, 221 S.W.3d at 584. Assuming without deciding that the contacts to which appellees point show purposeful availment of Texas's benefits, we hold that there is not a sufficient connection between those contacts and the litigation to support the exercise of specific

personal jurisdiction over Gonzalez. *See Pelican State Physical Therapy, L.P. v. Bratton,* No. 01–06–00199–CV, 2007 WL 2833303, at *7 (Tex.App.-Houston [1st Dist.] Sept. 27, 2007, no pet.) (mem. op.).

Appellee's First Amended Original Petition alleges causes of action against Gonzalez for (1) breach of fiduciary duty of loyalty to Lexus of Las Vegas, (2) usurpation of corporate opportunities, and (3) a declaratory judgment that Gonzalez is not entitled to an ownership interest in Lexus of Las Vegas and Lexus of Akron–Canton. The facts that appellees alleged in support of the breach of loyalty and usurpation claims are that Gonzalez (1) improperly usurped business opportunities by secretly trying to obtain other dealerships, (2) actively recruited other Lexus of Las Vegas employees to leave Lexus of Las Vegas, (3) improperly purchased a car from one of his recruits, (4) did not effectively attend to inventory management, causing reduced profits, and (5) was late and unprepared for meetings at the Las Vegas dealership.

The facts that appellees have alleged in support of their declaratory judgment action are essentially identical to those above. Appellees allege that Gonzalez's potential compensation plan discussed in 2005 contained two important features:

(1) A vesting period. "Accordingly, under the potential plan, Gonzalez would receive no ownership interest during the first two years. Thereafter, Gonzalez would become vested over an additional three year period, so that at the end of five years, he would be eligible to acquire up to ten percent (provided he paid for the interest)" and

(2) "[T]he potential ten percent ownership interest was to be acquired based on payment determined as a percentage of the good will of the store. Thus, the value of the potential ten percent ownership interest to be acquired by Gonzalez (after the vesting period) was to be reduced by the amount of indebtedness owed by him in connection with acquiring the interest."

Appellees contend that as result of the facts alleged above regarding Gonzalez's job performance as a general manager, he was fired in September 2006 and they allege that he is not entitled to any compensation for any interest in the dealership.

Based on the following alleged facts, appellees assert that Gonzalez had sufficient minimum contacts with Texas, i.e., that Gonzalez purposefully availed himself of the privilege of conducting activities in the State of Texas, because:

1. Gonzalez sought out employment in Texas, along with related benefits, such as health insurance and bonuses.

2. Gonzalez was paid from Texas for his employment.

3. Gonzalez traveled to Texas to attend a "forecast and training" meeting, attendance at which was a requirement of Gonzalez's continued employment in Nevada.

4. Gonzalez regularly reported to executives in Texas.

5. Gonzalez claims entitlement to "Texas property" because he claims a ten percent ownership interest in KW# 1 and AAG–Las Vegas.

6. Gonzalez came to Houston, Texas for a meeting to discuss his compensation package as general manager.

However, appellees' focus on Gonzalez's contacts with Texas, particularly the Houston meeting at which Gonzalez's compensation package was discussed, is overly narrow. *Compare Pelican State,* No. 01–06–00199–CV, 2007 WL 2833303, at *10 (holding trial court did not err in refusing to exercise specific personal jurisdiction over out-of-state defendant when operative

facts in plaintiff's suit concerned acts that happened while defendant was employed at plaintiff's Louisiana clinic, rather than in Texas). Given the pleadings in this case, the operative facts of appellees' breach of loyalty, usurpation claims and declaratory judgment action all concern Gonzalez's acts while general manager in Las Vegas. These are the facts that are relevant for a specific personal-jurisdiction analysis, and the allegations and the evidence show that these acts happened in Nevada. *See id.* (holding that test for "relatedness" portion of specific personal-jurisdiction test is that substantial connection exist between litigation's operative facts and nonresident defendant's contacts with Texas); *see also Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 483 (Tex.App.-Dallas 2003, no pet.) (holding that none of nonresident's following contacts was sufficiently connected to execution of confidentiality agreement that nonresident was alleged to have breached or to dissemination of confidential information so as to allow exercise of specific personal jurisdiction over him: (1) employment relationship itself, (2) two visits to Texas during employment, (3) payment from Texas bank, (4) submission of requests for reimbursement to Texas and subsequent cashing of those checks, (5) employee's communication with employees located in Texas, (6) employee's health benefits' being administered from Texas offices, (7) provision of employee's health insurance through Texas company, and (8) Texas location of insurance agents who administered employee's dental and life insurance). Accordingly there is no substantial connection between the operative facts of the claims in this litigation and Gonzalez's alleged contacts with Texas. *Id.*

Nevertheless, on rehearing appellees argue that the trial court has personal jurisdiction over Gonzalez because the declaratory judgment claim narrowly asks just one question, "[W]hat was said to Gonzalez at a meeting in Houston, Texas?", i.e., what were "[t]he alleged words spoken in Texas." Thus, they argue that the declaratory judgment action arises from a Texas dispute, the operative fact of this claim is directly related to Gonzalez's contact with Texas and the exercise of jurisdiction is warranted. We disagree. Appellees' characterization of the operative facts of the declaratory judgment is again overly narrow. A review of the allegations of the petition reflects that the operative facts of the declaratory judgment action have no substantial connection with Houston. The petition sets out the contents of the alleged compensation discussions in Houston and there is nothing in the record indicating that Gonzalez has disputed these contents. Instead all the claims in the petition, including the determination of Gonzalez's right to an alleged ownership interest in the dealership, turn on Gonzalez's job performance and length of tenure in Las Vegas and not any of Gonzalez's alleged contacts in Texas.

We distinguish *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434 (Tex.1982), on which appellees rely, in which there were sufficient minimum contacts subjecting the nonresident defendant, an operator of an Arizona school, to the jurisdiction of the Texas court. Siskind, a Texas resident, sued the Villa Foundation for Education for numerous causes of action, including breach of contract, misrepresentation, and violation of the Texas Deceptive Trade Practices Act. *Id.* at 435–36. In holding that Villa was amenable to suit in Texas, the court found significant the existence of a written contract between the parties in which Villa voluntarily agreed to the omission of a provision limiting litigation to Arizona at the Texas resident's request. *Id.* at 435. Further, the court determined that because Villa had a prac-

tice of advertising, mailing informational packets, applications, invitations to re-enroll, and enrollment contracts in Texas, Villa affirmatively solicited Texas business and therefore purposefully availed itself of the benefits of contacts with Texas. *Id.* at 436.

Here, the record does not support the conclusion that Gonzalez directed similar efforts at Texas to obtain employment with appellees. Gonzalez came to Texas to interview for the position with Lexus of Akron–Canton at Watts's request while he was employed by another car dealership in Ohio. Gonzalez's deposition testimony demonstrates that he had conversations with both Watts and Whalen about the possibility of being the general manager of Lexus of Las Vegas, but Gonzalez stated that the majority of those conversations were in Akron. Therefore, unlike Villa, whose contacts with Texas were "substantial," Gonzalez's contacts with Texas were minimal. *Id.* at 437.

We also distinguish *Tempest Broadcasting Corp. v. Imlay*, 150 S.W.3d 861 (Tex. App.-Houston [14th Dist.] 2004, no pet.), and *Silbaugh v. Ramirez*, 126 S.W.3d 88 (Tex.App.-Houston [1st Dist.] 2002, no pet.), similarly relied on by appellees. In *Tempest*, Tempest Broadcasting Corporation, a Texas resident, sued Christopher Imlay, a Maryland attorney, and his law firm, for breach of contract and several intentional torts. *Tempest Broadcasting Corp.*, 150 S.W.3d at 866. At the center of the dispute was an AM radio station located in Robstown, Texas and a Federal Communication Commission (FCC) broadcasting license. *Id.* at 865.

In holding jurisdiction proper in Texas, the court found that Imlay and the law firm conducted business in Texas and committed the intentional torts in Texas. *Id.* at 875–76. Specifically, the court found that Imlay made direct representations in Texas to Tempest upon which it relied to its detriment and which formed the basis for Tempest's claims against Imlay and the law firm. *Id.* at 876. These representations were provided in writing and by telephone to Tempest in Texas. *Id.*

In contrast, in the instant case, the vast majority of this litigation's operative facts took place in Nevada. Specifically, the facts that appellees allege in support of the breach of loyalty and usurpation claims all took place in Las Vegas. Unlike Tempest, who made numerous representations in Texas that formed the basis of the underlying litigation, Gonzalez's contacts with Texas were minimal. *Id.* at 875–76. Moreover, Tempest involved the sale of a radio station that was located and broadcasting within the geographical borders of Texas. *Id.* at 865.

Finally, in *Silbaugh*, the plaintiff brought suit in Texas against the defendant asserting several tort and breach of contract claims related to the investment by Ramirez in a leasing program and loss of his funds from Silbaugh's IOLTA account. *Silbaugh*, 126 S.W.3d at 91. In upholding the trial court's denial of Silbaugh's special appearance, the appellate court held that because Silbaugh had solicited business with Ramirez while he was in Texas through multiple conference calls and faxes; entered into a written contract with Ramirez, which he signed in Texas; accepted Ramirez's payment from Texas; and engaged in correspondence regarding entering into and carrying out the contract in Texas; Silbaugh knew or reasonably should have expected that Ramirez would perform his part of the contract from Texas. *Id.* at 96. Therefore, the court found that Silbaugh had sufficient contacts with Texas to establish specific personal jurisdiction. *Id.*

There is no such written contract in the instant case. And, again, for the reasons

discussed, Gonzalez's contacts with Texas are not such that the operative facts of the underlying litigation justify specific personal jurisdiction in Texas. For these reasons, we hold that the trial court erred in denying Gonzalez's special appearance. We sustain appellant's issue.

### Conclusion

Because Gonzalez did not "purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. at 160), Gonzalez lacks sufficient minimum contacts to support an assertion of specific jurisdiction in Texas. Accordingly, we reverse the order of the trial court denying Gonzalez's special appearance and render judgment sustaining the special appearance.