**Opinion issued June 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00181-CV

———————————

**RAIDEN COMMODITIES, LP AND ASPIRE COMMODITIES, LP,**
**Appellants**

**V.**

**PATRICK DE MAN, Appellee**

---

**On Appeal from the 125th Judicial District**
**Harris County, Texas**
**Trial Court Case No. 2016-59771**

---

## MEMORANDUM OPINION

Raiden Commodities, LP and Aspire Commodities, LP appeal the trial court's

grant of appellee Patrick De Man's special appearance. Appellants argue that De

Man had sufficient relevant contacts with Texas to be subject to personal jurisdiction in Texas. He did not.

Raiden and Aspire sought a declaration that a non-Texan who was recruited outside of Texas and performed his work outside of Texas was not a partner in either entity. Raiden and Aspire also asserted claims of conversion, misappropriation of trade secrets, and breach of the partnership agreements pertaining to alleged actions that occurred outside of Texas. The relevant parties reside in Puerto Rico and a parallel case is pending in Puerto Rico.

Deferring to the trial court's supported findings of fact, we conclude that De Man had insufficient relevant contacts with Texas to support jurisdiction. The trial court properly granted De Man's special appearance.

**Background**

This appeal turns on De Man's contacts with Texas. De Man contends he had almost no contacts with Texas. Appellants Aspire and Raiden—two limited partnerships—disagree. The facts are as follows.

Beginning in September 2008, De Man lived and worked in New York. At all relevant times, De Man was a citizen of the Netherlands.

In 2009, Andrew Sinn—who was then a Texan but now resides in Puerto Rico—approached De Man about working for one of his trading companies. In 2009

and 2010, Sinn met De Man in New York at least five times to discuss working together. They did not meet in Texas during this period.

In 2010, De Man moved to Connecticut. Sinn offered De Man employment at Aspire. Sinn sent De Man an offer letter but De Man never signed it.[1]

In April 2011, De Man (who still lived in Connecticut) began working in Connecticut as a commodities trader for Aspire. He had no written employment agreement. Outside of Texas, De Man made trades on behalf of Aspire and, ultimately, Raiden. Raiden was formed in 2011 as a Virgin Islands limited partnership.

In 2013, De Man moved to Puerto Rico and became an employee of Raiden Commodities 1, LLC (RC1). RC1 is a Puerto Rican LLC with its principal place of business in Dorado, Puerto Rico. It is not a party to this lawsuit. Around the time of De Man's move, Sinn also moved to Puerto Rico, where he conducted a "substantial amount of his work for the companies." In 2013, Aspire listed a Puerto Rican address on its tax forms and Raiden listed a Virgin Islands address. In 2014, both partnerships listed Puerto Rican addresses.

---

[1] The unsigned letter specified terms of employment that would be "performable in whole or in part in Harris County, Texas" and "shall be construed between the parties determined in accordance with the laws of the State of Texas." It also stated that if a party pursued an employment-related legal action, "such action shall be commenced and prosecuted in the courts of Harris County, Texas or in the United States District Court for the Southern District of Texas."

3

After De Man joined RC1, Schedule K-1 tax forms (IRS Form 1065) for appellants Raiden and Aspire listed De Man as a partner.

With regard to Texas travel, De Man says that he visited Texas only four times—three times in 2011 and once in 2014. He contends that all visits were five days or less and none related to the claims in this lawsuit. Aspire and Raiden contend that De Man "worked out of the Houston office physically on several occasions, including coming to Houston to interview candidates for an analyst position supporting his trades."

In July 2016, De Man terminated his employment relationship with RC1 and demanded the distribution of alleged unpaid earnings. When the companies refused to pay him, De Man sent a demand letter and ultimately filed a lawsuit in Puerto Rico. Aspire and Raiden brought this lawsuit in Texas.

De Man filed a special appearance in this case, contesting the trial court's personal jurisdiction over him. The trial court concluded that it lacked jurisdiction and entered the following findings of fact:

> 1.    Patrick de Man ("De Man") lives in Dorado, Puerto Rico. At all times material to this case he was a citizen of the Netherlands.
>
> 2.    After the Lehman Brothers bankruptcy in September 2008, De Man moved to New York City, New York and he lived there until 2010.
>
> 3.    In October 2009, De Man Accepted a job offer with Sempra Energy Trading LLC in Stamford, Connecticut.

4

4. From 2010 to 2013, De Man lived in Stamford, Connecticut.

5. De Man moved to Puerto Rico in 2013, and he has lived there ever since.

6. De Man has not lived in Texas since September 2008.

7. In 2009, Adam Sinn ("Sinn") approached De Man about the possibility of working with one of the trading companies affiliated with Sinn.

8. During the entire time that Sinn was having those discussions with De Man, De Man lived in New York or Connecticut, and De Man never set foot in Texas.

9. In 2009 and 2010, Sinn met with De Man in New York on at least five occasions and discussed the possibility of a working relationship.

10. At the time of those meetings, De Man felt that he had a job at a well-established and reputable institution, Sempra, and the thought of leaving that job to work with a Sinn-affiliated company seemed risky to him. De Man's wife had recently given birth to his son, and Sinn sought to persuade De Man to take the risk of working with him.

11. In 2012 and part of 2013, De Man was hired by Plaintiff Aspire Commodities LP ("Aspire") to work as a commodities trader in Connecticut, as evidenced by numerous employment documents from the State of Connecticut.

12. In 2013, De man moved to Puerto Rico, and he was subsequently described as a partner on Schedule K-1 tax forms (IRS Form 1065) for Plaintiffs Raiden Commodities LP ("Raiden") and Aspire Commodities LP ("Aspire").

13. All of the trading in which De Man engaged in on behalf of Raiden and Aspire was executed from outside of Texas.

5

14. Raiden was originally incorporated in the Virgin Islands, and it was incorporated there at all times prior to and including the date on which the lawsuit was filed.

15. The Schedule K-1 tax forms provided by Raiden to Sinn and De Man show that Raiden was located in the Virgin Islands and Puerto Rico.

16. The Schedule K-1 tax forms provided by Aspire to Sinn and De Man show that Aspire is located in Puerto Rico.

This interlocutory appeal followed.

## Special Appearance

In their sole issue, Raiden and Aspire contend that the trial court erred in granting De Man's special appearance. It did not.

### A. Standard of Review

Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When a defendant challenges personal jurisdiction in a special appearance, the plaintiff bears the initial burden of pleading allegations that bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). If the plaintiff meets that burden, the burden shifts to the nonresident defendant to negate all bases of jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658; *Proppant Sols.,*

*LLC v. Delgado*, 471 S.W.3d 529, 536 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Where, as here, a trial court issues findings of fact and conclusions of law in connection with its ruling on a special appearance, we review the findings of fact on sufficiency grounds and the conclusions of law de novo. *BMC Software*, 83 S.W.3d at 794; *Curocom Energy LLC v. Shim*, 416 S.W.3d 893, 896 (Tex. App.—Houston [1st Dist.] 2013, no pet.). We set aside a finding of fact only if the evidence would not enable a reasonable and fair-minded finder of fact to make the finding at issue. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

## B. Applicable Law

A Texas court has personal jurisdiction over a nonresident defendant if Texas's long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal due process. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *Curocom Energy*, 416 S.W.3d at 896; *see* TEX. CIV. PRAC. & REM. CODE §§ 17.041–17.045. Federal due process requires that the nonresident defendant have purposefully established minimum contacts with the forum state, such that the defendant could reasonably anticipate being sued there. *Curocom Energy*, 416 S.W.3d at 896; *see also Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84 (1985). The exercise

of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Curocom Energy*, 416 S.W.3d at 896.

A nonresident's contacts can give rise to general or specific personal jurisdiction. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). "General jurisdiction is established when a defendant's contacts 'are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)). Specific jurisdiction is triggered when the plaintiff's cause of action arises from or relates to the defendant's contacts with the state. *Id.* at 886. This case focuses on specific jurisdiction.

The touchstone of specific jurisdictional analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex. 2005). The defendant must purposefully avail himself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws. *Id.*

In assessing whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors. *Moncrief Oil*, 414 S.W.3d at 151 (first citing *Retamco Operating, Inc. v. Rep. Drilling Co.*, 278 S.W.3d 333, 338–39 (Tex. 2009); then citing *Burger King*, 471 U.S. at 473, 475, 105 S. Ct. at 2183–84; and then citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

8

286, 297, 100 S. Ct. 559, 567 (1980)). First, we consider the defendant's contacts with the forum—not the unilateral activity of someone else. *Id.* Second, we assess whether the contacts are purposeful, as required, or merely random, fortuitous, or attenuated. *Id.* Third, we consider whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.*; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts[.]'") (citation omitted).

The contacts at issue must be substantially connected to the litigation's operative facts. *See Bristol-Myers Squibb*, 137 S. Ct. at 1780–81; *Gonzalez v. AAG Las Vegas, L.L.C.*, 317 S.W.3d 278, 283 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Walden*, 134 S. Ct. at 1121 (The "defendant's suit-related conduct must create a substantial connection with the forum State."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (reversing when the "State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims"); *Goodyear*, 564 U.S. at 930 n.6, 131 S. Ct. at 2857 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

9

A single contract with a Texas company does not necessarily constitute purposeful availment. *See Michiana*, 168 S.W.3d at 787 ("[I]n some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state. A long-term franchise agreement may establish minimum contacts because, though it stems from a single contract, it involves many contacts over a long period of time.").[2] Likewise, being employed by a Texas company is not necessarily sufficient. *See Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 399–408 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (former employee of Texas company, who operated out of the United Kingdom, did not establish sufficient relevant contacts with Texas for Texas to assert jurisdiction); *see also Gonzales*, 317 S.W.3d at 285.

## C. Analysis

Aspire and Raiden seek a declaration that De Man was not a partner in either entity. They also contend that he misappropriated trade secrets and converted property and that, to the extent he is a partner, he breached their partnership agreements. But as to these issues, Raiden and Aspire have not shown that De Man established sufficient contacts with Texas to confer jurisdiction on Texas courts. As

---

[2]    "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985).

10

explained, we consider De Man's contacts—not appellants'—and look to his purposeful contacts that relate to this case's operative facts. We also consider whether De Man sought some benefit, advantage, or profit by availing himself of Texas.

We first address the declaratory judgment. We then turn to appellants' other claims.

Declaratory Judgment

It is undisputed that, outside of Texas, Sinn approached De Man about working for Sinn's companies.[3] De Man participated in employment negotiations from outside of Texas, and he did not live in Texas at any relevant time.

De Man also performed his work outside of Texas. We defer to the trial court's supported finding that "[a]ll of the trading in which De Man engaged in on behalf of Raiden and Aspire was executed from outside of Texas."

The trial court found that Raiden was "located in the Virgin Islands and Puerto Rico" and "Aspire [was] located in Puerto Rico." Appellants' Schedule K-1 tax

---

[3]     *Compare The Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2015 WL 4508424, at *13 (N.D. Tex. July 24, 2015) ("And in this case, Plaintiffs show that it was Jackson's purposeful actions—in particular, his repeated pleas to Staneart in Texas, both over the phone and in person—that led to the formation of the parties' long-standing business relationship underlying the state law claims at issue."), *with Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 404 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Rawlinson did not 'reach out' to Texas by seeking employment in Texas; he averred that he did not solicit employment or business in Texas and there is no contrary evidence.").

11

forms from 2013 and 2014 list Raiden's location as the Virgin Islands and Puerto Rico and Aspire's location as Puerto Rico. The record supports the trial court's findings with regard to the companies' locations for 2013 and 2014. *See City of Keller*, 168 S.W.3d at 827. And appellants admit that Raiden was a U.S. Virgin Islands limited partnership at all times relevant to this dispute.

Even if Aspire were a Texas limited partnership, simply having an employment relationship with a Texas partnership would not be enough, alone, to support jurisdiction in Texas. *See Rawlinson*, 302 S.W.3d at 400 ("Merely contracting with a Texas company does not constitute purposeful availment for jurisdictional purposes. . . . Nor does simply being employed by a Texas company."). Nor is it even always enough for a defendant to be a limited partner in a Texas entity (and notably, appellants do not argue that De Man is a limited partner in either entity). *See Nacho Remodeling Co., Inc. v. Calsherm Partners, L.P.,* No. 05-14-00048-CV, 2014 WL 3828219, at *3–4 (Tex. App.—Dallas Aug. 5, 2014, no pet.) (mem. op.) (Texas lacked jurisdiction over limited partners in a Texas partnership; partners were California residents and passive investors with no purposeful contacts with Texas). A defendant's contacts must reflect purposeful availment of the privilege of conducting activities within Texas, thereby invoking the benefits and protection of its laws. *See Burger King,* 471 U.S. at 475–76. The key question is whether the *defendant's* litigation-related actions connect him to the

*forum*—not whether his contacts connect him with appellants. *Walden*, 134 S. Ct. at 1123–24. De Man did not affirmatively establish sufficient relevant connections with Texas.

Notably, this is not a lawsuit brought by De Man asserting an interest in a Texas company but instead a declaratory judgment brought against him (a non-Texan) arguing that he is *not* a partner in either appellant entity. Our court addressed a similar situation in *Gonzales v. AAG Las Vegas, L.L.C.*, 317 S.W.3d 278 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), a declaratory judgment action concerning ownership rights of an out of state car dealership. We concluded that Gonzales's Texas employment-related contacts—including interviewing for his out-of-state position in Texas, reporting to Texas, receiving pay from Texas, and regularly phoning Texas—lacked a sufficient connection to the litigation's operative facts, i.e., Gonzalez's acts (his tenure and performance) while serving as general manager in Las Vegas. *Id*. at 284–87. That reasoning applies here, where the operative actions transpired outside of Texas.

*Information Services Group., Inc. v. Rawlinson*, 302 S.W.3d 392 (Tex. App.—Houston [14th Dist.] 2009, pet. denied), is also instructive. *Id*. at 399–408. There, appellants argued that Rawlinson established minimum contacts with Texas through his "contracts with and employment by Texas companies, his two trips to Texas for company conferences, his access to the appellants' servers in Texas

through his use of the appellants' website and his email account, and his occasional communications with the appellants' representatives outside of the U.K." *Id.* at 404. Yet our sister court concluded that Rawlinson was not subject to jurisdiction in Texas. *Id.* at 404–08. The court explained: "On the facts before us, the majority of the focus of any trial would be directed to Rawlinson's alleged wrongdoing in the U.K., not Texas. It is undisputed that Rawlinson lived and worked in the U.K., entered into his contracts with appellants in the U.K., worked for Eurosourcing in the U.K., negotiated his employment with [a competitor] in the U.K., and now works for [the competitor] in the U.K." *Id.* at 404. Rawlinson's alleged contacts with Texas were "not substantially connected to the operative facts of a trial based on the appellants' allegations." *Id.*[4]

So too here. Whether De Man obtained a partnership interest in Aspire or Raiden is not substantially related to actions De Man took in or directed at Texas. In other words, any contacts De Man had with Texas were "not substantially connected to the operative facts of a trial based on the appellants' allegations." *Id.*

---

[4] Appellants in *Rawlinson* alleged that "Rawlinson breached contracts containing non-compete, non-solicitation, and non-disclosure covenants by, among other things, accepting employment with the appellants' competitor, contacting or soliciting business from the appellants' clients, taking confidential and proprietary information from the appellants, and providing such information to" the competitor. *Id.* Certain contracts at issue in *Rawlinson* included choice of law and forum selection clauses specifying non-Texas law and forums. The case is nonetheless persuasive.

14

We are unpersuaded by appellants' contention that the unsigned offer letter or Aspire or Raiden's partnership agreements[5] create Texas jurisdiction. De Man did not execute either the offer letter or the partnership agreements,[6] and appellants do not contend that De Man is a party to the partnership agreements. On this record, these unexecuted documents—that De Man may have not executed for any reason—do not establish the trial court's jurisdiction. *See Phillips Dev. & Realty, LLC v. LJA Eng'g, Inc.*, 499 S.W.3d 78, 86 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[I]f the court's jurisdiction in a specific-jurisdiction analysis hinges on the fact that the defendant entered into a contract with a resident of Texas to be performed in whole or in part by either party in Texas . . . the defendant can defeat the attempted exercise of jurisdiction by a Texas court by proving that it did not enter into such a contract.").

Nor does this dispute arise out of any meeting in Texas or representations made by De Man in Texas. *Cf. Cagle v. Clark*, 401 S.W.3d 379, 393-94 (Tex. App.—

---

[5] De Man was not a party to Aspire's or Raiden's original partnership agreements, which did not contain dispute resolution provisions. In 2013, Aspire and Raiden amended their agreements. Raiden's amended agreement provides that "any dispute among partners shall be resolved in the courts of Harris County, Texas" and that "all parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of any Texas state district court sitting in Harris County, Texas, United States of America in any action or proceeding arising out of or relating to this agreement or any ancillary agreement. . . ." De Man was not a party to the amended agreements and did not sign them.

[6] With regard to the offer letter, the record shows that De Man responded with proposed revisions, but the parties never signed an agreement.

Texarkana 2013, no pet.) (nonresident financial backer of Texas corporation had sufficient contacts with Texas to support specific personal jurisdiction where backer came to Texas several times to negotiate agreement with corporation, and corporation's claims against backer stemmed from allegedly fraudulent representations made by backer during those negotiations *in Texas*).

And we do not agree with appellants that De Man's employment activities were "directed at Texas" because De Man traded energy commodities on the ERCOT market—a Texas exchange that is generally open to buyers and sellers inside and outside of Texas.[7] In support for their position, appellants cite *Smart Call, L.L.C. v. Genio Mobile*, 349 S.W.3d 755 (Tex. App.—Houston [14th Dist.] 2011, no pet.), where our sister court affirmed the trial court's exercise of jurisdiction over Smart Call, a mobile network operator. The court exercised jurisdiction after determining that Smart Call delivered products to Texas, "negotiated with" a Texas corporation that "served only Texas customers," and took "the additional step of customizing its products for the Texas market." *Id*. at 762–64. By contrast, appellants here offered no evidence that the buyers and sellers of the energy

---

[7] "Texas operates an independent and self-contained electric production and transmission grid; its system operator is the Electric Reliability Council of Texas ('ERCOT')." *BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449, 451 (Tex. App.—Corpus Christi 2006, no pet.) (citing TEX. UTIL. CODE § 39.151).

commodities that De Man traded were located in Texas or that De Man specifically targeted Texas customers.

In sum, on appellants' declaratory judgment claim, De Man lacked sufficient relevant and purposeful contacts with Texas to confer jurisdiction on Texas courts. *See Gonzalez*, 317 S.W.3d at 283; *Rawlinson*, 302 S.W.3d at 400–05; *Pelican State Physical Therapy, L.P. v. Bratton*, No. 01-06-00199-CV, 2007 WL 2833303, at *4– 9 (Tex. App.—Houston [1st Dist.] Sept. 27, 2007, no pet.) (mem. op.); *Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 484 (Tex. App.—Dallas 2003, no pet.); *see also Walden,* 134 S. Ct. at 1121–26 (because the "relevant conduct occurred entirely in Georgia . . . the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction"); *Bristol-Myers Squibb,* 137 S. Ct. at 1782; *Rushmore Inv. Advisors, Inc. v. Frey*, 231 S.W.3d 524, 526–27, 530 (Tex. App.—Dallas 2007, no pet.) (Texas lacked jurisdiction over Pennsylvania employee of a Texas company; "merely contracting with a Texas company does not necessarily constitute purposeful availment for jurisdictional purposes" and "Frey's alleged liability did not arise from or was not related to activity conducted within Texas"). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122.

Conversion, Misappropriation, and Breach of Partnership Agreements

The same reasoning applies to appellants' claims of conversion, misappropriation of trade secrets, and breach of the partnership agreements. De Man lacks sufficient purposeful contacts with Texas connected to the operative facts of these claims.

The alleged conduct underlying each of these claims occurred outside of Texas. "On the facts before us, the majority of the focus of any trial would be directed to [De Man's] alleged [actions]" outside of Texas. *Rawlinson*, 302 S.W.3d at 402, 404 ("Even if we assume that Rawlinson ultimately obtained confidential information from the Texas-based servers and gave it to EquaTerra in breach of the various restrictive covenants with the appellants, there is no allegation or evidence that he did so in Texas."); *M & F Worldwide*, 512 S.W.3d at 887 ("The torts at issue—fraudulent transfer and tortious interference—hinge on the effect of the parties' execution of the New York settlement agreement and related conduct that occurred outside of Texas."); *Gustafson*, 118 S.W.3d at 484 (Michigan employee's travel to Texas for management meetings was not a contact connected to alleged breach of confidentiality agreement when employer did not assert that employee breached any duties to it or committed any torts during those meetings); *see also Ashdon, Inc. v. Gary Brown & Assocs., Inc.*, 260 S.W.3d 101, 112–17 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (Florida sales representative was not subject to

18

specific jurisdiction in Texas on wedding gown importer's conversion claim; trial court found that representative took possession of promotional materials in Florida).

*          *          *

Appellants did not establish that De Man had sufficient purposeful and relevant contacts with Texas to establish jurisdiction in this case. Because we conclude that De Man lacks minimum contacts with Texas, we need not reach the issue of "fair play and substantial justice." *See* TEX. R. APP. P. 47.1; *Anchia v. DaimlerChrysler AG*, 230 S.W.3d 493, 503 (Tex. App.—Dallas 2007, pet. denied).[8]

## Conclusion

We affirm the judgment of the trial court.

Jennifer Caughey
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

---

[8] To the extent that appellants argue that the trial court had general jurisdiction over nonresident De Man, this argument is unpersuasive. The record does not support a conclusion that De Man had continuous and systematic contact with Texas such that he is essentially at home here. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").