Tracy Christopher, Justice
In this case asserting contract and breach-of-fiduciary-duty claims, defendant Richard Turman appeals from the trial court's ruling denying his special appearance. Turman's Texas contacts are insufficient to support general jurisdiction; however, the record supports the trial court's implied finding that there is a substantial connection between Turman's Texas contacts and the operative facts of the breach-of-fiduciary-duty claim alleged by plaintiff POS Partners, LLC ("POSP"). We therefore conclude that the trial court did not err in exercising specific jurisdiction over that claim. We conclude, however, that there is no such substantial connection between Turman's Texas contacts and POSP's request for a declaration that it is not liable to Turman under the terms of a compensation agreement executed by Turman and a POSP employee. We accordingly affirm the trial court's ruling in part, reverse it in part, and remand the case to the trial court with instructions to sever and dismiss POSP's contract claim for lack of personal jurisdiction.
I. BACKGROUND
POSP is a Texas company that does business in several states. The company *899 markets and sells point-of-sale hardware, software, and services, including credit card processing services.
Oklahoma resident Turman worked for a similar company, CRS Inc., in Oklahoma. After POSP purchased CRS Inc. or its assets in the summer of 2013, POSP began doing business in Oklahoma under the name CRS Oklahoma or CRS Oklahoma, LLC. Turman became a regional account manager for POSP and was paid as a commissioned sales agent. While working for POSP, Turman also formed his own company, Specialized POS Systems, LLC. Turman purchased the equipment that Specialized POS sells from Nelson Distributing in Texas, which POSP alleges is the same vendor that supplies POSP's equipment.
Turman received sales leads from POSP, and on four occasions, these included POSP customers in Texas. Turman sold POSP equipment to Speedy Mart in Wheeler, Texas and Pasqual, Inc. in Wichita Falls, Texas. According to Turman, he contacted these companies at POSP's direction, and the two companies placed their orders for equipment upgrades by telephone. Regarding the third instance, POSP states in a footnote in its live pleading that Turman has filed an affidavit in which he admits receiving a lead from POSP that Robbin's True Value Hardware in Canadian, Texas, needed a broken cash register replaced. POSP further states that Turman admits he sold and installed the cash register in Texas through his own company rather than through POSP. In the fourth instance, POSP alleges that it informed Turman that Ginger's Point Corporation d/b/a Blue Bayou wanted to buy a cash register and that Turman instead sold the equipment through his own company and kept the sales proceeds. The customer's sales order and canceled checks, which POSP attached to its pleading, identify only an Oklahoma address; however, as with Robbin's True Value Hardware, POSP states in a footnote that "Turman has filed an affidavit admitting ... that he personally sold and installed (in Texas) the point-of-sale equipment that Blue Bayou was seeking to purchase from POSP...."[1]
After discovering that Turman had used his own company to sell equipment to POSP's customers, POSP informed Turman in April 2016 that he was terminated. In response, Turman emailed POSP that it had breached its contract with him by failing to pay all of the commissions POSP owed him. He produced a document dated September 16, 2013 with POSP's logo above the heading, "RE: Sales Compensation Schedule, Richard Turman, Regional Account Manager."[2] The compensation agreement is executed by Turman and signed on POSP's behalf by Dan Martin. Among other things, the compensation schedule calls for Turman to be paid a 15% commission on sales and to receive an automobile allowance of $350/month. According to Turman, the agreement was negotiated and executed in Oklahoma. POSP alleges alternatively that the document is a forgery and that Martin lacked authority to sign such an agreement on POSP's behalf.
*900 POSP sued Turman in Texas for breach of fiduciary duty, alleging that Turman made sales on behalf of other companies to POSP's existing or potential customers. POSP also sued for construction of the compensation contract, asking the trial court for a declaration that the 2013 compensation agreement between POSP and Turman is invalid or unenforceable. POSP argued in the alternative that Turman ratified a change in the compensation agreement because throughout the three years of his employment, Turman accepted POSP's payment of only a 12% commission with no automobile allowance.
Turman filed an original and two amended special appearances contesting the court's exercise of personal jurisdiction over him. The record does not show that POSP responded, and we have no record of the oral hearing on the special appearance, which we presume was non-evidentiary.[3]
The trial court denied Turman's special appearance, and in a single issue, Turman challenges the trial court's ruling.
II. STANDARD OF REVIEW
In the trial court, the plaintiff bears the initial burden to allege facts bringing the defendant within reach of the Texas long-arm statute. See Kelly v. Gen. Interior Constr., Inc. , 301 S.W.3d 653, 658 (Tex. 2010). If the plaintiff does not do so, then the defendant can defeat jurisdiction merely by proving that it does not reside in Texas. See ids="7299855" index="1" url="https://cite.case.law/sw3d/301/653/#p658">id. at 659. If the plaintiff does allege sufficient jurisdictional facts, then the burden shifts to the defendant to negate the bases of personal jurisdiction alleged. See ids="7299855" index="2" url="https://cite.case.law/sw3d/301/653/#p658">id. at 658. If the defendant does so, then the burden shifts back to the plaintiff to affirm its allegations with legal authority or evidence showing jurisdiction. See ids="7299855" index="3" url="https://cite.case.law/sw3d/301/653/#p658">id. at 659.
Because the existence of personal jurisdiction is a question of law, we review the trial court's ruling de novo. See Am. Type Culture Collection, Inc. v. Coleman , 83 S.W.3d 801, 805-06 (Tex. 2002). In determining whether personal jurisdiction exists, however, the trial court may have to resolve factual disputes. See ids="11433943" index="5" url="https://cite.case.law/sw3d/83/801/#p805">id. at 806 (citing BMC Software Belg., N.V. v. Marchand , 83 S.W.3d 789, 794 (Tex. 2002) ). Where, as here, the trial court issues no factual findings, we presume that the trial court resolved all factual disputes in favor of the judgment. See ids="11433901" index="7" url="https://cite.case.law/sw3d/83/789/#p794">id. (citing BMC Software , 83 S.W.3d at 795 ). If the record includes the clerk's and reporter's records, a litigant may challenge the trial court's implied findings for legal and factual sufficiency. See BMC Software , 83 S.W.3d at 795. But, because the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony, we will not substitute our judgment for that of the trial court, even if we might reach a different result in similar circumstances. See Thu Thuy Huynh v. Thuy Duong Nguyen , 180 S.W.3d 608, 615 (Tex. App.-Houston [14th Dist.] 2005, no pet.).
III. GOVERNING LAW
Our state long-arm statute "extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.' " M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co. , 512 S.W.3d 878, 885 (Tex. 2017) (quoting BMC Software , 83 S.W.3d at 795 ). Federal due-process requirements are satisfied if (a) the nonresident *901 defendant has "minimum contacts" with the forum state, and (b) the court's exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " Id. (quoting Walden v. Fiore , 571 U.S. 277, 134 S.Ct. 1115, 1121, 188 L.Ed. 2d 12 (2014) ).
The principle underlying minimum-contacts analysis is that "[t]he defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." M & F Worldwide , 512 S.W.3d at 886 (quoting Retamco Operating, Inc. v. Republic Drilling Co. , 278 S.W.3d 333, 338 (Tex. 2009) ). A defendant has established minimum contacts with the forum state if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (quoting Moncrief Oil Int'l, Inc. v. OAO Gazprom , 414 S.W.3d 142, 150 (Tex. 2013) ).
When determining whether the defendant has purposefully availed itself of the privilege of conducting activities in Texas, three rules are paramount. First, only the defendant's contacts are relevant, not the unilateral activity of someone else. See ids="7086325" index="17" url="https://cite.case.law/sw3d/414/142/#p150">id. (citing Michiana Easy Livin' Country, Inc. v. Holten , 168 S.W.3d 777, 785 (Tex. 2005) ). Second, the defendant's acts must be purposeful and not random or fortuitous. See ids="8942911" index="19" url="https://cite.case.law/sw3d/168/777/#p785">id. And third, the defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit in the forum state. Id. (quoting Michiana , 168 S.W.3d at 785 ).
The extent of a defendant's contacts that are sufficient to support personal jurisdiction depends upon whether general jurisdiction or specific jurisdiction is alleged. See Kelly v. Gen. Interior Constr., Inc. , 301 S.W.3d at 658 (pointing out that the burden borne by a defendant who files a special appearance is to "negate all bases of personal jurisdiction alleged by the plaintiff"). A court may exercise general jurisdiction over a nonresident defendant if the defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." M & F Worldwide , 512 S.W.3d at 885 (quoting Goodyear Dunlop Tires Operations, SA v. Brown , 564 U.S. 915, 919, 131 S.Ct. 2846, 2851, 180 L.Ed. 2d 796 (2011) ) (alteration in original). A court may exercise specific jurisdiction if the nonresident defendant's "alleged liability arises from or is related to an activity conducted within the forum," even if the defendant's contacts with the forum state are isolated or sporadic. Spir Star AG v. Kimich , 310 S.W.3d 868, 873 (Tex. 2010) (citing CSR Ltd. v. Link , 925 S.W.2d 591, 595 (Tex. 1996) ).
A single act can support specific jurisdiction as long as there is a substantial connection with the forum state. See Phillips v. Phillips , 826 S.W.2d 746, 748 (Tex. App.-Houston [14th Dist.] 1992, no writ). However, a single act or occasional acts may be insufficient to establish jurisdiction if the act's nature, quality, and surrounding circumstances create only an attenuated connection with the state, diminishing the reasonable foreseeability of litigation there. See ids="9983693" index="30" url="https://cite.case.law/sw2d/826/746/#p748">id. Specific jurisdiction therefore exists only if there is a "substantial connection" between the defendant's forum contacts and the operative facts of the litigation. Moki Mac River Expeditions v. Drugg , 221 S.W.3d 569, 585 (Tex. 2007).
*902 POSP alleged both general and specific jurisdiction. We consider the two types of jurisdiction separately.
IV. GENERAL JURISDICTION
To determine whether the trial court has general jurisdiction over Turman, we analyze all contacts for proof of a pattern of continuing and systematic activity. See Am. Type Culture Collection , 83 S.W.3d at 809.
POSP begins by pointing out that Turman "negotiated and entered into an employment agreement with POSP, a Texas resident, that was partially performable by POSP in Texas." Under the Texas long-arm statute, contracting with a Texas resident constitutes doing business in this state if either party is to wholly or partially perform the contract in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(a) (West 2015). But, without more, merely contracting with a Texas resident does not represent purposeful availment.
When an employee lives and works outside of Texas, employment "by a company with its principal place of business in Texas is not sufficient to establish the requisite minimum contacts with Texas." Rushmore Inv. Advisors, Inc. v. Frey , 231 S.W.3d 524, 530 (Tex. App.-Dallas 2007, no pet.) (quoting Gustafson v. Provider HealthNet Servs., Inc. , 118 S.W.3d 479, 483 (Tex. App.-Dallas 2003, no pet.) ). POSP does not contend that Turman directed his employment efforts at Texas. Cf. Gonzalez v. AAG Las Vegas, L.L.C. , 317 S.W.3d 278, 286 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) (op. on reh'g). To the contrary, Turman testified, without contradiction, that he began working for POSP only after POSP bought Turman's Oklahoma employer or its assets. Turman further attested that his employment agreement with POSP was negotiated and executed in Oklahoma.
Many of the remaining contacts identified by POSP are the result of its own unilateral activity or are too attenuated, random, or fortuitous to constitute purposeful availment. These include (1) Turman's receipt, in Oklahoma, of compensation, benefits, and sales leads that POSP provided from Texas; and (2) Turman's oral and electronic communications to POSP's supervisory and support personnel who were located in Texas. But cf. N803RA, Inc. v. Hammer , 11 S.W.3d 363, 368 (Tex. App.-Houston [1st Dist.] 2000, no pet.) (holding that general jurisdiction was not supported by defendant's numerous phone calls and faxes to plaintiff in Texas, and defendant's receipt, in Florida, of payments from plaintiff's Texas bank). In determining general jurisdiction, acceptance of checks drawn on a Texas bank is of "negligible significance." PHC-Minden, L.P. v. Kimberly-Clark Corp. , 235 S.W.3d 163, 167 (Tex. 2007) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall , 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed. 2d 404 (1984) ). POSP does not allege that Turman had any control over the bank POSP used. POSP also does not allege that Turman had any control over whether, in dealing with its Oklahoma employees, POSP used its Texas office or its Oklahoma branch as the site from which to administer benefits, route referrals, and provide supervision and support. Turman did not purposefully avail itself of the benefits of doing business in Texas simply because POSP chose to support its business in Oklahoma with resources in or from Texas.
POSP further alleges that Turman purchased from a Texas vendor the *903 equipment he sold through his own company. But "purchases from Texas vendors will not alone support the exercise of general jurisdiction." Am. Type Culture Collection , 83 S.W.3d at 808.
In addition to all of the above, POSP alleges that Turman traveled to Texas on behalf of POSP and made presentations and sales in Texas on POSP's behalf; however, Turman's second amended special appearance is supported by his affidavit testimony, "I did not make solicitations or make sales presentations on behalf of POSP to customers located in Texas." This shifted the burden back to POSP, which failed to respond with controverting evidence. See Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer , 904 S.W.2d 656, 660 (Tex. 1995) (statements in a verified petition are not evidence).[4]
Turman's carefully worded statement that he did not make solicitations or sales presentations "on behalf of POSP to customers located in Texas" does not foreclose the possibility that Turman (a) made unsolicited sales initiated by Texas customers; or (b) made solicitations or sales presentations to Texas customers when he was not acting on POSP's behalf. Of the four sales to Texas customers alleged by POSP, Turman essentially has characterized two of the sales as unsolicited and two as sales that were not made on POSP's behalf.
Regarding the first category, Turman attests that he did not solicit or provide sales presentations to Texas companies Speedy Mart and Pasqual Inc., but that these companies instead contacted POSP's Oklahoma branch about updating their equipment. Turman states that the Oklahoma branch directed him to contact Speedy Mart and Pasqual, so he telephoned them and they placed their orders by phone.
As to Turman's Texas contacts that were not made on POSP's behalf, POSP alleges that Turman admittedly sold equipment through his own company and installed the equipment in the stores of POSP Texas customers Blue Bayou and Robbin's True Value Hardware. Turman does not dispute this. In his live special appearance, Turman does not discuss Blue Bayou, and he admits selling the equipment to Robbin's True Value Hardware.
In sum, Turman's Texas contacts over the three years that he worked for POSP[5] consist of (a) his employment in Oklahoma by a Texas company, (b) purchases from one Texas vendor, (c) telephoning and taking the orders of two Texas customers at POSP's direction, and (d) trips to Texas in which he sold his own equipment to two Texas POSP customers. General jurisdiction, however, requires such "continuous and systematic general business contacts" that the forum state could exercise jurisdiction over the defendant even if the suit concerned only a "claim without any forum connection." PHC-Minden , 235 S.W.3d at 169. While Turman's few Texas contacts might be sufficient to confer specific jurisdiction over a claim related to those contacts, they do not rise to the level necessary to support general jurisdiction. See id. at 171 (holding that a Texas court lacked general jurisdiction over a Louisiana hospital because the hospital's one-time *904 contract for a Texas company to conduct a survey for $5,200 was a "sporadic" contact and its contract that physicians in Texas provide teleradiology services for $1,600 per month was "limited"); see also Helicopteros Nacionales , 466 U.S. at 410-11, 418-19, 104 S.Ct. at 1870, 1874, 80 L.Ed. 2d 404 (defendant's purchase of 80% of its helicopter fleet and Texas visits by company personnel to negotiate that contract and for training and technical consultations did not support general jurisdiction). We therefore must determine if the trial court's denial of Turman's special appearance is supported by contacts sufficient to establish specific jurisdiction.
V. SPECIFIC JURISDICTION
Specific jurisdiction is established on a claim-by-claim basis unless all the asserted claims arise from the same forum contacts. M & F Worldwide , 512 S.W.3d at 886 (citing Moncrief Oil , 414 S.W.3d at 150 ). Because POSP's breach-of-fiduciary-duty claim arises from different contacts than its request for a declaration concerning the parties' rights under the 2013 compensation agreement, we consider the claims separately.
A. Specific Jurisdiction Over POS's Breach-of-Fiduciary-Duty Claim
Regarding POSP's tort claim for breach of fiduciary duty, the Texas long-arm statute authorizes the exercise of personal jurisdiction over a defendant who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2). But as previously mentioned, specific jurisdiction exists only if there is a "substantial connection" between the defendant's forum contacts and the operative facts of the litigation. Moki Mac , 221 S.W.3d at 585. When analyzing Turman's arguments concerning POSP's tort claim, we accordingly begin by identifying the elements of the claim and determining whether there is a substantial connection between Texas and the operative facts that must be proved to establish the claim.
Breach of fiduciary duty requires proof that (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc. , 416 S.W.3d 642, 650 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (citing Lundy v. Masson , 260 S.W.3d 482, 501 (Tex. App.-Houston [14th Dist.] 2008, pet. denied) ). In identifying the facts to be adjudicated at trial, we note that POSP does not allege that the parties had an informal fiduciary relationship, and that whether the parties have a formal fiduciary relationship is generally a question of law for the court. See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co. , 235 S.W.3d 695, 704 (Tex. 2007) (citing Meyer v. Cathey , 167 S.W.3d 327, 330 (Tex. 2005) (per curiam)). On the other hand, the parties disagree about whether the cash register Turman sold to Robbin's True Value Hardware was a model carried by POSP, and thus, whether Turman usurped POSP's opportunity to make the sale. When the facts are disputed, the question of whether a party breached a fiduciary duty is a question of fact. See Nugent v. Estate of Ellickson , --- S.W.3d ----, ----, No. 14-16-00839-CV, 2017 WL 5894304, at *10 (Tex. App.-Houston [14th Dist.] Nov. 30, 2017, no pet. h.) (citing Deutsch v. Hoover, Bax & Slovacek, L.L.P. , 97 S.W.3d 179, 192 (Tex. App.-Houston [14th Dist.] 2002, no pet.) ). If a breach is proven, then POSP additionally *905 would have to prove damages. See Lee v. Lee , 417 S.W.3d 767, 781 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). The evidence at trial therefore will be primarily concerned with (1) whether, in this and similar instances, Turman breached any fiduciary duty to POSP by making sales on behalf of his own company that he instead should have made on behalf of POSP; and if so, (2) the extent to which Turman benefitted or POSP was injured by Turman's conduct. In this example, Turman is said to have breached his fiduciary duty in Texas by selling equipment to POSP's Texas customer. Thus, in this instance, the evidence at trial likely will focus on events that occurred in Texas.
The record before us accordingly supports the existence of specific jurisdiction over POSP's breach-of-fiduciary duty claim. Although the record does not support the existence of continuous and systematic contacts with Texas, Turman's sale to Robbin's True Value Hardware is a contact that satisfies all of the requirements of purposeful availment for the purpose of specific jurisdiction.[6] First, it is Turman's own contact, not the unilateral activity of a third party. See M & F Worldwide , 512 S.W.3d at 886 (citing Michiana , 168 S.W.3d at 785 ). Second, Turman's act was purposeful rather than random or fortuitous; POSP did not direct Turman to cause his company to sell equipment to POSP's Texas customer. See ids="8942911" index="58" url="https://cite.case.law/sw3d/168/777/#p785">id. And third, Turman sought a benefit or profit by selling and installing equipment in Texas through his company rather than through POSP. See ids="8942911" index="59" url="https://cite.case.law/sw3d/168/777/#p785">id. There also is a substantial connection between this contact and the operative facts of the litigation, namely whether Turman's conduct in selling and installing a cash register in Texas to POSP's customer constituted a breach of fiduciary duty, and if so, the extent to which the sale damaged POSP or benefitted Turman.
We accordingly affirm the denial of Turman's special appearance as it applies to POSP's claim for breach of fiduciary duty.
B. Specific Jurisdiction Over POSP's Contract-Construction Claim
POSP also asserted a contract-construction claim, requesting a declaration that it owes Turman nothing under the compensation agreement because the agreement is invalid or unenforceable, or alternatively, because Turman ratified an implicit modification to the contract by accepting less remuneration than the contract required POSP to pay. See MBM Fin. Corp. v. Woodlands Operating Co. , 292 S.W.3d 660, 668-69 (Tex. 2009) (explaining that a party may appropriately use the Uniform Declaratory Judgments Act to obtain a declaration of contractual non-liability). Whether a contract is enforceable generally is a question of law. See Range v. Calvary Christian Fellowship , 530 S.W.3d 818, 828 (Tex. App.-Houston [14th Dist.] Oct. 3, 2017, no pet. h.) (op. on reh'g) (citing Parker Drilling Co. v. Romfor Supply Co. , 316 S.W.3d 68, 72 (Tex. App.-Houston [14th Dist.] 2010, pet. denied) ). But, whether a person has ratified an act is generally is a question of fact "to be determined from all the circumstances [in] evidence." Jerry L. Starkey, TBDL, L.P. v. Graves , 448 S.W.3d 88, 102 (Tex. App.-Houston [14th Dist.] 2014, no pet.) (quoting *906 Chrisman v. Electrastart of Hous., Inc. , No. 14-02-00516-CV, 2003 WL 22996909, *5 (Tex. App.-Houston [14th Dist.] Dec. 23, 2003, no pet.) (mem. op.)) (alteration in original).
As applied to POSP's request for declaratory relief, the claim falls within our long-arm statute, which provides that contracting with a Texas resident constitutes doing business in this state if either party is to wholly or partially perform the contract in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(a). Nevertheless, exercising specific jurisdiction over a foreign defendant based on such a contract violates due process if the defendant has not purposefully availed itself of the privileges and benefits of conducting activities in the forum state or if there is not a substantial connection between the defendant's forum contacts and the operative facts of the litigation.
Some contacts are easily eliminated from this analysis. If the contract is enforceable, POSP would owe Turman commissions only on sales he made on POSP's behalf, not sales he made on behalf of his own company. Because sales Turman made through his own company are not covered by the compensation agreement, those contacts have no substantial connection to the operative facts of this claim, even if Turman made the sales in Texas.
This leaves only Turman's Texas contacts created by his employment and contractual relationship with POSP. Regarding contacts created by a contractual relationship, we must consider prior negotiations, contemplated future consequences, the contract's terms, and the actual course of dealing. See Burger King Corp. v. Rudzewicz , 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed. 2d 528 (1985).
Turman attested, without contradiction, that he negotiated and entered into the contract with POSP in Oklahoma. The contract contains no choice-of-law or choice-of-forum provisions. It identifies Turman as the regional account manager, and although it does not identify the region concerned, POSP offered no evidence controverting Turman's testimony that he made no solicitations or sales presentations in Texas on POSP's behalf. POSP contends that Turman ratified a modification to the contract by accepting lower compensation than the contract required, but POSP does not allege that Turman accepted the compensation in Texas.[7]
Specific jurisdiction over POSP's contract-construction claim also is unsupported by Turman's telephoning of Texas customers Speedy Mart and Pasqual Inc., by his receipt in Oklahoma of sales leads that POSP provided from Texas, or by Turman's oral and electronic communications with POSP's supervisory and support personnel in Texas. Three cases concerning a Texas employer's assertion of specific jurisdiction based on a former employee's employment-related Texas contacts illustrate why this is so.
In Information Services Group, Inc. v. Rawlinson , defendant Rawlinson lived and *907 worked in the U.K. while employed by Texas company TPI Eurosourcing, L.L.C., with operations in the U.K. 302 S.W.3d 392, 396 (Tex. App.-Houston [14th Dist.] 2009, pet. denied). After his employment ended, Eurosourcing sued Rawlinson in Texas for breach of non-disclosure, non-solicitation, and non-competition agreements. Id. at 396-97. Eurosourcing argued that Rawlinson traveled twice to Texas for company conferences, but because the trips were made at his employer's direction, we held that "[s]uch unilateral activity is insufficient to constitute relevant jurisdictional contacts." Id. at 401. We additionally pointed out that the trips were not alleged to be related to Eurosourcing's contract claims. See ids="7299152" index="71" url="https://cite.case.law/sw3d/302/392/#p396">id. Eurosourcing additionally alleged that "Rawlinson accessed confidential and proprietary information-via the company website and email-from company servers that happened to be located in Texas." Id. But these contacts presented the same problems: Because Eurosourcing chose the location for the servers, Rawlinson's use of the "website and email that happened to be routed through servers [Eurosourcing] chose to locate in Texas is merely fortuitous." And because Eurosourcing did not allege that Rawlinson acted improperly or unlawfully in accessing the servers, there was no substantial connection between his access and Eurosourcing's claims. See ids="7299152" index="73" url="https://cite.case.law/sw3d/302/392/#p396">id. at 404-05.
Just as Rawlinson attended meetings in Texas at his employer's direction, so too did Turman contact POSP's Texas customers Speedy Mart and Pasqual Inc. at POSP's direction. And just as Rawlinson's use of the company's website and email through Texas servers was the fortuitous result of decisions made unilaterally by his employer, POSP's unilateral decision to provide sales leads, supervision, and support for its Oklahoma operations from Texas rendered these contacts merely fortuitous. Finally, just as in Rawlinson , there is no substantial connection between the defendant's forum contacts and the contract claim at issue.
In the similar case of Gustafson v. Provider HealthNet Services, Inc. , Texas employer Provider HealthNet Services, Inc. ("PHNS") sued former employee Gustafson for breach of a confidentiality agreement, misappropriation of trade secrets, and breach of fiduciary duty. 118 S.W.3d 479, 481 (Tex. App.-Dallas 2003, no pet.). PHNS alleged that specific jurisdiction was supported by Gustafson's Texas contacts, consisting of (1) his employment by a Texas company, (2) his two employment-related visits to Texas, (3) his acceptance of payment from a Texas bank, (4) his submission of reimbursement requests to PHNS's Texas office, (5) his communications with PHNS employees who were located in Texas, (6) his acceptance of health insurance through Blue Cross Blue Shield of Texas, and (7) the administration of Gustafson's dental and life insurance through Texas insurance agents. See ids="9067364" index="75" url="https://cite.case.law/sw3d/118/479/#p483">id. at 483. The reviewing court held that these contacts did not support the existence of specific jurisdiction because they "relate only superficially to [Gustafson's] general employment relationship with PHNS." Id. at 484. POSP alleges that Turman has the same kinds of Texas contacts, and for the same reasons, they do not support the exercise of specific jurisdiction.
In the case of Gonzalez v. AAG Las Vegas, L.L.C. , 317 S.W.3d 278 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) (op. on reh'g), our sister court reached the same result in a case dealing specifically with a Texas employer's request for declaratory judgment that a nonresident former *908 employee was not entitled to the compensation allegedly promised to him. While Gonzalez was working in Ohio at an automobile dealership, he was approached by a Texas employer about working at an Ohio dealership the employer was considering purchasing. See ids="7322563" index="78" url="https://cite.case.law/sw3d/317/278/#p286">id. at 280. The employer interviewed Gonzalez in Texas, where it allegedly promised Gonzalez the right to earn an ownership interest in the dealership. See ids="7322563" index="79" url="https://cite.case.law/sw3d/317/278/#p286">id. Gonzalez initially worked at the new Ohio dealership, then accepted a transfer to a related entity's Las Vegas dealership before being terminated. See ids="7322563" index="80" url="https://cite.case.law/sw3d/317/278/#p286">id. at 280-81. The employer sued for, inter alia , a declaration that it did not owe Gonzalez an ownership interest. The Gonzalez court held that there was no substantial connection between the employer's claims and contacts that included (1) Gonzalez's receipt of compensation and benefits from Texas, (2) his attendance at a mandatory training meeting in Texas, (3) his travel to Texas to discuss his compensation package, and (4) his regular reports to executives in Texas. See ids="7322563" index="81" url="https://cite.case.law/sw3d/317/278/#p286">id. at 284. The court explained that the outcome of the employer's request for declaratory relief would turn on Gonzalez's job performance and length of tenure, which occurred outside of Texas. See id. at 285. Here, POSP's contract-construction claim will turn on communications made to Turman in Oklahoma and Turman's acceptance in Oklahoma of less than was promised in the compensation agreement.
Because the contacts alleged are merely fortuitous, and for the independent reason that there is no substantial connection between Turman's Texas contacts and the operative facts of POSP's request for declaratory relief concerning Turman's compensation agreement, we conclude that the trial court erred in denying Turman's special appearance as to that claim.
VI. CONCLUSION
Turman's contacts with Texas are insufficient to support the exercise of general jurisdiction, but are sufficient to support specific jurisdiction over POSP's claim for breach of fiduciary duty; thus, the trial court did not err in denying Turman's special appearance as to that claim. Regarding POSP's request for a declaration that it is not liable to Turman under the compensation agreement, there is no substantial connection between the operative facts of the litigation and Turman's Texas contacts, which were merely the fortuitous result of POSP's unilateral decisions.
We therefore conclude that the trial court properly denied Turman's special appearance as to the breach-of-fiduciary-duty claim, but erred in failing to grant Turman's special appearance over POSP's contract claim. We accordingly affirm in part, reverse in part, and remand the case to the trial court with instructions to sever and dismiss POSP's request for declaratory relief regarding the compensation agreement from the remainder of the case, and for further proceedings consistent with this opinion.

POSP likely is referring to Turman's affidavit attached to earlier iterations of his special appearance. After POSP filed its second amended petition referring to the affidavit, Turman filed a second amended special appearance to which he attached a second amended affidavit. The new affidavit contains the same admissions about the sale to Robbin's True Value Hardware, but omits any mention of Blue Bayou.

We have added commas to indicate the end of each line.

See Michiana Easy Livin' Country, Inc. v. Holten , 168 S.W.3d 777, 783 (Tex. 2005).

There can be exceptions to the general rule that pleadings are not evidence-for example, allegations in a suit on a sworn account will be treated as evidence in certain circumstances-but no such exception applies here.

This is the only period for which there are allegations or evidence.

We have used Robbin's True Value Hardware as an example, but the analysis would be the same for other sales Turman made through his own company to Texas customers.

To the contrary, POSP attached Turman's 2014 W-2 forms to its live pleading, and those forms state the amount of Turman's compensation and taxes withheld, but link Turman only to his address in Oklahoma. The W-2 forms also show that Oklahoma state income tax was withheld from Turman's compensation. While the documents attached to POSP's pleading are not evidence, see Duruji v. Duruji , No. 14-05-01185-CV, 2007 WL 582282, at *4-5 (Tex. App.-Houston [14th Dist.] Feb. 27, 2007, no pet.) (mem. op.), they are part of POSP's allegations. In effect, POSP alleged that Turman was compensated in Oklahoma, and Turman did not challenge that allegation in his special appearance.