**Affirmed and Memorandum Opinion filed May 3, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00799-CV

**FRED FUCHS, Appellant**

**V.**

**IAN TEPOOT, ALEX TORRES, AND LIVESPLICE MEDIA, INC.,
Appellees**

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2020-18632**

## M E M O R A N D U M   O P I N I O N

Appellant Fred Fuchs appeals an order granting the special appearance filed by appellees Ian Tepoot, Alex Torres, and LiveSplice Media, Inc. and dismissing Fuchs's claims. We conclude that the trial court did not err in impliedly finding that appellees did not have sufficient minimum contacts with the state of Texas to confer specific jurisdiction over them as to Fuchs's claims. Accordingly, we affirm.

## Background

This dispute arises from interactions between Fuchs, Tepoot, and Torres before and after the launch of LiveSplice Media, Inc. In March 2020, Fuchs, a Texas resident, sued Tepoot, Torres, and LiveSplice, all nonresidents,[1] in Texas.

Fuchs alleged the following facts in his petition:

- Some years ago, Mr. Torres, Mr. Tepoot and Mr. Fuchs found each other and gradually came up with the LiveSplice Concept. They jointly worked on the concept for some period of time with each person contributing some parts of the project development. . . .

- In November 2014, Torres, Tepoot and Fuchs decided to incorporate the business [in Delaware]. . . . The Certificate [of Incorporation] listed no persons as initial directors. The LiveSplice Media, Inc. founders chose not to to have an initial incorporators meeting or board of directors meeting to properly complete the incorporation. . . . . They did not even have a Shareholders Meeting to elect directors, so no persons even had authority to act a[s] director. No company officers were appointed, nor could they have been.

- While there were no written, signed agreements among the parties, there were verbal agreements and are notes of their intent which basically indicated that each party would receive one-third of the company and that Plaintiff [Fuchs], with the title Development Executive Director, would provide IT, development of software production, project management and hire coders when such was agreed among all parties; Defendant Torres, with the title of Creative Executive Director, would locate venture capital, provide PR and develop video production; and Defendant Tepoot, with the title Studio Executive Director, would work on graphic arts, marketing, and video editing, and be in charge of hiring non-coding employees. At the time [Fuchs] was suffering financial difficulties. Defendants Tepoot and Torres were concerned that a bankruptcy by

---

[1] Tepoot and Torres are long-term Florida residents who have never resided in Texas. LiveSplice is a Delaware company incorporated in August 2015, with its principal, and only, place of business in Miami, Florida.

[Fuchs] would make venture funding more difficult for LiveSplice. For this reason, they agreed to give [Fuchs] a stipend for as long as he agreed to not file bankruptcy. Despite extreme financial pressures he did not do so for the sake of LiveSplice.

- To make matters even more complicated Defendants Tepoot and Torres attempted to remove [Fuchs] as Secretary of the Company and attempted to install a third party as the Company Secretary; removed [Fuchs] as a signatory on the Company Bank Account, incidentally hiding all financial activities from Fuchs; removed him from access to the Company Computer System and the Chat System, which he was in charge of managing, blocking his access to those systems and to the software portions of which he had developed; and attempted to remove him as a Director and attempted to install a third party as a director at a supposed Directors Meeting which was not made known to the allegedly terminated Director prior to the meeting being held, constructively firing him. Additionally, Defendants Tepoot and Torres entered the computer system on which [Fuchs] kept software belonging to him personally, and used by him exclusively, to manage LiveSplice's systems and copied this valuable software for their own use at the same time they shut [Fuchs] out of the company.

- Throughout this Defendants Tepoot and Torres made promises to [Fuchs], which they obviously had no intention of keeping, of stock in LifeSplice and a general ownership interest in the company, to induce him to provide the extensive services he did provide over years to LiveSplice, which he relied on to his detriment.

Based on these factual allegations, Fuchs asserted claims against Tepoot, Torres, and LiveSplice for breach of contract, quantum meruit, promissory estoppel, and common law and statutory fraud. Against Tepoot and Torres only, he pleaded a breach of fiduciary duty claim. Fuchs asserted personal jurisdiction over Tepoot, Torres, and LiveSplice based only on principles of specific jurisdiction.

Appellees challenged the trial court's personal jurisdiction over them. In their special appearance, they claimed the court lacked personal jurisdiction because: (a) they have no continuing and systematic contacts with Texas; (b) Fuchs's claims

3

do not arise from activity conducted by them in Texas; (c) they have no substantial connection with Texas arising from the action or conduct described in Fuchs's petition; (d) they do not maintain a place of business and have no employees in Texas; (e) they have not engaged in business in Texas; and (f) they are not Texas residents. They contended that the trial court lacked both specific and general jurisdiction over them. Additionally, their special appearance was supported by declarations from both Tepoot and Torres. In their declarations, Tepoot and Torres stated that: (1) they were long-term Florida residents; (2) Tepoot and Torres started LiveSplice, a company aimed a creating a collaborative entertainment application; (2) LiveSplice was incorporated in Delaware on August 11, 2015; (3) LiveSplice's principal place of business, and only office, is in Miami, Florida; (4) Tepoot recommended Fuchs to Torres because he believed that Fuchs "had a set of skills that might help LiveSplice launch"; (5) Fuchs was supposed to provide a budget for the technical and build portion of LiveSplice's development, but Fuchs did not fulfill these commitments; (6) Tepoot and Torres only spoke to Fuchs over the phone, by email, or via text message; (7) neither Tepoot nor Torres ever traveled to Texas to meet with Fuchs; (8) Fuchs told Tepoot and Torres that he planned to relocate to Miami to help run LiveSplice; (9) all the computers, bank accounts, and software that Fuchs refers to in his petition were located in Miami; and (10) none of the events alleged in Fuchs's petition occurred in Texas.

Fuchs responded to appellees' special appearance, countering Tepoot's and Torres's factual statements. In his verified response, he stated that "early discussions for what became LiveSplice were held when Ian Tepoot and his wife visited Fred Fuchs in Houston." According to Fuchs, Tepoot and Torres "agreed that LiveSplice would have offices in both Miami and Houston and [Fuchs] provided costs on office space rental and insurance for a Houston office." He denied that there was any

4

agreement for him to relocate to Florida. In his declaration attached to the response, Fuchs stated that he met with several consultants and an attorney in Texas to discuss LiveSplice's business, as well as interviewing potential employees for LiveSplice while he resided in Texas. Fuchs stated, "While I was in Texas Mr. Tepoot and Mr. Torres made multiple representations to me regarding my place in LiveSplice and my ownership interests in that company. There [sic] representations proved to be false." As well, he asserted that Tepoot and Torres entered his computer system, where he kept his personal data and software, "in Texas, and copied valuable data and software for their own use."

After a hearing, the trial court granted appellees' special appearance, dismissing without prejudice all of Fuchs's claims against them. This appeal followed.

## Analysis

### A.   Personal jurisdiction framework and standard of review

Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. *See* Tex. Civ. Prac. & Rem. Code §§ 17.042, 17.043. The legislature has described a non-exclusive list of acts that may constitute "doing business" in this state, such as: contracting with a Texas resident and either party is to perform the contract in whole or in part in Texas; or committing a tort in whole or in part in Texas. *See id.* § 17.042(1), (2).

5

The exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.— Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017). A nonresident defendant's purposeful contacts with a forum state can give rise to either general or specific jurisdiction, *id.* at 885, but as reflected in Fuchs's jurisdictional allegations contained in his petition, Fuchs alleged only specific jurisdiction over the defendants in today's case.

Specific jurisdiction generally exists if the defendant's alleged liability arises out of or is related to his purposeful activity conducted within the forum. *See Moki Mac*, 221 S.W.3d at 576. Thus, in analyzing specific jurisdiction, we evaluate the defendant's purposeful contacts in addition to the relationship among the defendant, the forum, and the particular litigation at hand. *See M&F Worldwide*, 512 S.W.3d at 886; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 575-76. The Supreme Court of Texas has stated that specific jurisdiction arises when: (1) the nonresident creates minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here; and (2) a substantial connection exists between those purposeful contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 575-76, 585. If both of these circumstances are satisfied, then a Texas court may exercise personal jurisdiction over a nonresident defendant so long as doing so comports with traditional notions

of fair play and substantial justice. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Id.* at 658. The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code § 17.042; *Perna v. Hogan*, 162 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2005, no pet.). If the plaintiff fails to plead facts bringing the defendant within reach of the Texas long-arm statute, the defendant need only prove that he does not live in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d at 658.

If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* A defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.* If the defendant meets his burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *Id.* at 660.

We review de novo a trial court's decision regarding a special appearance. *See M&F Worldwide*, 512 S.W.3d at 885. When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.*

7

## B. Application

In a single issue, Fuchs contends that he presented "ample evidence to establish that Texas courts have jurisdiction" over his claims. Specifically, he asserts that, in their special appearance, appellees "falsely" claimed (1) to have no continuing and systematic contacts with Texas and (2) that his claims do not arise from any activity conducted in Texas. He contends that, contrary to their declarations supporting their special appearance, appellees "were in continuing, systematic contact with Mr. Fuchs." As well, he complains that appellees did not refute his claim that they contracted with a Texas resident who was to perform his work at least in part in Texas. He further asserts that his declaration contradicts appellees' allegations and shows that: (1) he was approached by Tepoot while in Texas; (2) he lived in Texas during the pendency of his relationship with appellees; (3) the "vast majority" of his communications with appellees occurred while he was in Texas; (4) he and appellees planned to have offices in Houston and Miami because it was less expensive to hire engineers and technicians in Texas; and (5) at Tepoot's and Torres's direction, Fuchs interviewed potential employees in Texas;[2] (5) also at Tepoot's and Torre's direction, Fuchs sought rental and insurance costs for a Texas office, met with a consultant and attorney on behalf of LiveSplice, and met with potential consultants, investors, and employees in Texas; and (6) Tepoot and Torres "entered into Mr. Fuchs's computer, which was in Texas, and copied valuable data and software for their own use."[3]

---

[2] Fuchs attached an email exchange with a potential LiveSplice employee to his response to appellees' special appearance. In this exchange, he suggests that this potential employee, whose email indicates she was located in Cape Cod, should "consider a move to Houston." There is nothing in this email exchange establishing any Texas contacts by appellees.

[3] Fuchs provides no substantive legal analysis in support of any of these conclusory arguments, and only cites to the Texas long-arm statute itself in this portion of his brief. He does not tell us whether he is challenging the legal or factual sufficiency of the evidence to support the trial court's implied findings supporting its jurisdictional determination. *See, e.g.*, *BMC Software*

However, as excerpted above, Tepoot and Torres provided evidence, through their respective declarations, that they both are long-term Florida residents who have never resided in Texas; LiveSplice is a Delaware corporation with its principal and only place of business in Florida; both Tepoot and Torres only spoke to Fuchs over the phone, by email, or via text message; neither Tepoot nor Torres ever met with Fuchs in Texas; "none of the events alleged in [Fuchs]'s petition occurred in Texas"; and that "all computers, bank accounts, and software" that Fuchs refers to in his petition were located in Texas.

Although we review de novo the trial court's determination of personal jurisdiction, a trial court must frequently resolve questions of fact in making this determination. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). And when, as here, the trial court does not issue findings of fact and conclusions of law relating to its decision on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by the evidence. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). We presume that the trial court resolved all factual disputes in favor of its judgment. *Coleman*, 83 S.W.3d at 806. Credibility determinations are to be made by the trial court. *Watamar Holdings S.A. v. SFM Holdings, S.A.*, 583 S.W.3d 318, 325-26 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Turman v. POS Partners, LLC*, 541 S.W.3d 895, 900 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Here, the trial court credited Tepoot's and Torres's testimony and disbelieved Fuchs's testimony, which was its prerogative. *See, e.g.*, *Coleman*, 83 S.W.3d at 806

---

*Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (explaining that a party may challenge the trial court's factual findings supporting its ruling on a special appearance for legal or factual sufficiency).

(presuming trial court in special appearance resolved all disputed facts in favor of judgment); *Watamar Holdings*, 583 S.W.3d at 325 (stating that appellate court may not substitute its judgment for that of factfinder or pass on credibility of witnesses); *Turman*, 541 S.W.3d at 900 (same). Based on the evidence attached to appellees' special appearance, the trial court reasonably could have believed that none of the acts Fuchs detailed in his petition, such as Tepoot's and Torres's attempt to remove Fuchs as secretary of LiveSplice, their removal of his access to company systems and banking, their "entry" onto Fuchs's computer to "copy valuable software," and their "shutting out" Fuchs from LiveSplice, occurred in Texas.

Fuchs does not detail the alleged breach of contract on appeal; however, in his petition he specifies that appellees "failed to retain [Fuchs] as an active member of LiveSplice," and "failed and refused to provide a license for the use of the intellectual property created by the parties as agreed." As he acknowledges in his petition, the parties had no written contract. Further, nothing in these allegations indicates that any contract was to be performed in Texas. At most, Fuchs's allegations may show that appellees entered into a contract with Fuchs. But entering into an agreement with a Texas resident does not satisfy the minimum contacts requirement. *See Star Motor, LLC v. Motorwerks Vehicle Sales LLC*, No. 14-18-00763-CV, 2019 WL 2385755, at *4 (Tex. App.—Houston [14th Dist.] June 6, 2019, pet. denied) (mem. op.) (citing cases).

Fuchs's petition does not specify what actions of appellees amounted to a tort, but on appeal he suggests that Tepoot and Torres "entered into Mr. Fuchs['s] computer, which was in Texas, and copied valuable data and software for their own use," which amounts to "committing torts (fraud and conversion)[4] in whole or in part

---

[4] Fuchs did not sue appellees for conversion, so we are puzzled by this claim on appeal.

within the State of Texas." Importantly, both the United States and Texas supreme courts have rejected the "directed-a-tort" theory of specific jurisdiction. *See Old Republic*, 549 S.W.3d at 560-61; *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 68-80 (Tex. 2016); *see also Walden v. Fiore*, 571 U.S. 277, 285-291 (2014). Further, as noted above, the trial court could reasonably have believed that Tepoot and Torres "entered into" Fuchs's computer remotely from Florida to remove software. "Even if a nonresident defendant *knows* that the effects of its actions will be felt by a resident plaintiff, that knowledge alone is insufficient to confer personal jurisdiction over the nonresident." *Searcy*, 496 S.W.3d at 69. Due-process restraints on specific jurisdiction require a "substantial" connection with the forum state. *Id.* at 70.

In sum, specific jurisdiction does not turn on where a plaintiff happens to be, and it simply "does not exist where the defendant's contacts with the forum state are not substantially connected to the alleged operative facts of the case." *Id.* Fuchs failed to establish that the operative facts of this lawsuit are substantially connected to Texas. The trial court did not err in granting appellees' special appearance.

We overrule Fuchs's sole appellate issue.

## Conclusion

We affirm the trial court's judgment dismissing Fuchs's claims against Tepoot, Torres, and LiveSplice for lack of personal jurisdiction.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.